[Cite as *Powell v. Williams*, 2022-Ohio-526.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SOPHIA POWELL, ET AL.,              :

    Plaintiffs-Appellants,          :

                   No. 110536

    v.                              :

ERIC BRANDON WILLIAMS, ET AL.,     :

    Defendants-Appellees.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 24, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2020 ADV 251913

---

### *Appearances:*

Joseph Lewandowski, *for appellants.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiffs-appellants, Sophia Powell and Tiffany Powell ("appellants"), appeal the probate court's denial of their motion for genetic testing and dismissal of their will-contest complaint. For the reasons that follow, we affirm.

{¶ 2} Larry Williams ("decedent") died, testate, on August 14, 2019. The decedent's Last Will and Testament, dated May 29, 2018 (hereinafter "will"), specified that he had four children — defendant-appellee, Eric Brandon Williams ("Williams"), who is an adult, and three minor-aged children. The will appointed Williams to serve as executor and identified him as the sole primary beneficiary of the decedent's estate. The will further designated the decedent's minor children and Williams's children, if any, as contingent beneficiaries.

{¶ 3} On September 26, 2019, Williams applied to the probate court to probate the decedent's will and to administer his estate. As part of that application, Williams identified appellants as the decedent's "alleged daughters." The probate court subsequently appointed Williams as executor and issued him letters of authority to administer the estate.

{¶ 4} On May 21, 2020, appellants filed an action contesting the decedent's will, contending that they were the decedent's daughters and alleging that the decedent lacked testamentary capacity to execute the will or was under undue influence and duress by Williams in executing the will. As such, appellants requested that the probate court set aside the will, declare that the decedent died intestate, and award them a share of the decedent's estate. Appellants further requested that if Williams contested that appellants were, in fact, the decedent's natural-born children, that the court order genetic testing of Williams or that the decedent's remains be exhumed for genetic testing. Williams filed an answer, denying the allegations, including that appellants are the decedent's daughters.

**{¶ 5}** After several pretrials and discovery, appellants filed a motion for genetic testing to determine whether they are, in fact, the decedent's natural-born children. The motion requested that the court order DNA genetic testing on Williams and sought permission to request the voluntary consent of their mother and the decedent's brother to submit to DNA genetic testing. Appellants asserted that as their "first step" in contesting the decedent's will, they must establish that they are the biological children of the decedent. They claimed that in addition to an affidavit from their mother, birthday cards from the decedent, "beneficiary designations," and their inclusion in the decedent's obituary, the genetic testing would conclusively prove that they are the decedent's children. Appellants generally asserted that "illegitimate children" are entitled to inherit under the laws of intestate succession and any deprivation of that right violates the Equal Protection Clause. Appellants appeared to argue that the trial court's failure to order genetic testing would violate their constitutional right to equal protection under the law.

**{¶ 6}** Williams did not file any opposition to appellants' motion, and the probate court did not conduct a hearing.

**{¶ 7}** On April 29, 2021, the probate court denied appellants' motion for genetic testing, concluding that it lacked jurisdiction over any parentage action pursuant to R.C. 3111.381 because the statute of limitations in determining the existence or nonexistence of a parent-child relationship had expired. Consequently, the court determined that because the appellants are not "interested persons" as

required under R.C. 2107.71(A), they lacked standing to contest the decedent's will. Accordingly, the court dismissed appellants' complaint.

{¶ 8} Appellants now appeal, raising the following sole assignment of error:

> Ohio's statutory scheme denying an illegitimate child who is now an adult, (over 23), the right to inherit by intestate succession from the child's natural father unless the natural father has married the mother, the illegitimate child has been acknowledged in a court proceeding by the natural father[,] or the illegitimate child has been adopted by the natural father constitutes a violation of the [Fourteenth] Amendment's guarantee to the "Equal Protection of the Laws."

## I. Appeal[1]

{¶ 9} Appellants raise a constitutional argument challenging Ohio's statutory scheme regarding adult illegitimate children (i.e., natural-born children), and their ability to initiate proceedings to recognize a parent-child relationship after the alleged father's death for the purpose of inheriting under the laws of intestate succession.

{¶ 10} It is well established that a party cannot raise a constitutional issue for the first time on appeal. *See State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver and therefore need not be heard for the first time on appeal.") Moreover, even if appellants had properly raised and argued the

---

[1] The appellants' brief contains facts that are not included in the appellate record. This court will only review those facts that can be found in the appellate record. Although the trial court conducted multiple pretrials, appellants have not provided any transcript of those proceedings to this court.

constitutional issue with the probate court, this case can be decided without reaching the constitutional issue. Reviewing courts should avoid reaching constitutional issues "when 'other issues are apparent in the record which will dispose of the case on its merits.'" *In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937, ¶ 7, quoting *Greenhills Home Owners Corp. v. Greenhills*, 5 Ohio St.2d 207, 212, 215 N.E.2d 403 (1966); *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9.

{¶ 11} Although appellants generally argued in the probate court that denying a natural-born child her right to inherit under intestate succession violates the constitutional right of equal protection under the law, they failed to set forth specific challenges to Ohio's Parentage scheme, including its statute of limitations to bring such an action, and how Ohio's statutory scheme deprives appellants equal protection under the law. Accordingly, because appellants did not raise the equal protection issues in the probate court that they now raise on appeal, those arguments are waived for purposes of appeal.

{¶ 12} Nevertheless, the Ohio Supreme Court has previously determined that Ohio's statutory scheme, which only allows natural-born children to inherit from their natural fathers under certain circumstances, is constitutional and does not violate natural born children's rights to equal protection of the law as guaranteed by the Fourteenth Amendment or Article I, Section 2, of the Ohio Constitution. *White v. Randolph*, 59 Ohio St.2d 6, 11, 391 N.E.2d 333 (1979); *Brookbank v. Gray*, 74 Ohio St.3d 279, 287, 658 N.E.2d 724 (1996) (differentiating the equal protection

analysis regarding illegitimate rights in wrongful death actions and those in inheritance cases — "Even if the Parentage Act were interpreted to preclude illegitimate children from claiming inheritance rights from and through their natural fathers absent an adjudication of paternity *inter vivos*, it is clear that the Ohio intestate succession scheme would nevertheless be constitutional."); *Rushford v. Caines*, 10th Dist. Franklin No. 00AP-1072, 2001 Ohio App. LEXIS 1512, 9-10 (Mar. 30, 2001).

## II.   Probate Court's Jurisdiction

{¶ 13} Appellants focus their appeal on the constitutional challenges to Ohio's statutory scheme regarding illegitimate children, but do not make any specific argument challenging the probate court's denial of their motion for genetic testing or dismissal of their will contest complaint.  Nevertheless, we find no error.

{¶ 14} Although appellants brought this matter as a will-contest action, it morphed into a parentage action when appellants requested that the probate court order Williams and other nonparty individuals to submit to genetic testing.  The probate court, in its well-written opinion, properly dismissed the complaint, finding that it lacked jurisdiction to proceed.

{¶ 15} It is well-settled that proceedings in probate court are restricted to those actions permitted by statute and by the Constitution because the probate court is a court of limited jurisdiction.  *Corron v. Corron*, 40 Ohio St.3d 75, 531 N.E.2d 708 (1988), paragraph one of the syllabus, citing *Schucker v. Metcalf*, 22 Ohio St.3d

33, 488 N.E.2d 210 (1986). Pursuant to R.C. 2101.24(A)(1)(p), the probate court is vested with exclusive jurisdiction involving will-contest actions.

{¶ 16} Additionally, the probate court retains jurisdiction to determine the existence of a parent-child relationship in certain circumstances.[2] When the alleged father is deceased, the probate court retains jurisdiction of a parentage action under R.C. 3111.381(E). That statute provides that

> [i]f the alleged father of the child is deceased and proceedings for the probate of the estate of the alleged father have been or can be commenced, the court with the jurisdiction over the probate proceedings shall retain jurisdiction to determine the existence or nonexistence of a parent and child relationship between the alleged father and any child.

{¶ 17} In this case, the alleged father has a pending estate action subject to the jurisdiction of the probate court. Accordingly, under R.C. Chapter 3111, the probate court could also retain jurisdiction to determine the existence or nonexistence of a parent and child relationship between the decedent and appellants, if properly commenced.

## A. Will Contest Action

{¶ 18} Only a person with standing can bring an action or continue to prosecute an action. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 178, 298 N.E.2d 515 (1973). Under to R.C. 2107.71(A), a party challenging the will of a decedent must be a "person interested" in the will. A

---

[2]Under R.C. 2105.25, a probate court also has authority to review and determine actions by a man alleging himself to the father of an adult child (a person over the age of 23). This statute does not apply in this case because the alleged father is deceased.

"person interested," as defined by the statute, is one who has a "'direct, immediate and legally ascertained pecuniary interest in the devolution of the testator's estate as would be impaired or defeated by the probate of the will, or be benefitted by setting aside the will.'" *York v. Nunley*, 80 Ohio App.3d 697, 610 N.E.2d 576 (8th Dist.1992), quoting *Bloor v. Platt*, 78 Ohio St. 46, 49-50, 84 N.E. 604 (1908); *see also In re Estate of Scanlon*, 8th Dist. Cuyahoga No. 95264, 2011-Ohio-1097, ¶ 12.

{¶ 19} In this case, appellants cannot claim to be "person[s] interested" under the decedent's will because they are not named as beneficiaries. Accordingly, to have standing to bring a will-contest action as a "person interested," appellants would have to establish that they could inherit under the laws of intestate succession if the decedent's will was declared invalid.[3] To do this, the appellants must establish the existence of a parent-child relationship.

### B. Parentage Action

{¶ 20} Prior to 1982, an illegitimate child could inherit from her natural father only through certain means. The father had to: (1) marry the mother and acknowledge the child as his; (2) formally acknowledge in probate court that the child was his with the consent of the mother; (3) designate the child as an heir-at-law; (4) adopt the child; or (5) make a provision for the child in his will. *See White*

---

[3] Pursuant to R.C. 2105.06, when a person dies intestate, his property is distributed according to laws of intestate succession. Relevant to this case, under R.C. 2105.06(A), a decedent's property would pass "if there is no surviving spouse, to the children of the intestate or their lineal descendants, per stirpes."

*v. Randolph*, 59 Ohio St.2d 6, 11, 391 N.E.2d 333; *Garrison v. Smith*, 55 Ohio App.3d 14, 15, 561 N.E.2d 1041 (6th Dist.1988).

{¶ 21} Currently, however, a child born out of wedlock can also inherit from her natural father by alternate means under the Ohio Parentage Act, promulgated under R.C. Chapter 3111. This chapter provides procedures for the judicial establishment of the parent-child relationship.

{¶ 22} Relative to this appeal, an action to determine the existence or nonexistence of the father and child relationship may be brought by the child under R.C. 3111.04(A)(1).[4] However, pursuant to R.C. 3111.05, such action must be brought within five years after the child reaches the age of majority. The statute provides:

> An action to determine the existence or nonexistence of the father and child relationship may not be brought later than five years after the child reaches the age of eighteen. Neither section 3111.04 of the Revised Code nor this section extends the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by Chapter 2105., 2107., 2113., 2117., or 2123. of the Revised Code.

R.C. 3111.05.[5]

---

[4] R.C. 3111.03 also sets forth presumptions of paternity wherein a man is presumed to be the natural father of a child under certain circumstances. Appellants do not contend that any of these presumptions apply.

[5] Based on the plain language of the statute, it is apparent that the General Assembly contemplated the laws of inheritance when drafting and implementing this limitation period. Accordingly, any change is the law must be done by the General Assembly; this court cannot legislate from the bench.

{¶ 23} In this case, no assertion has been made that either of the appellants are 23 years old or younger. Accordingly, even if appellants properly brought a parentage action through the will-contest proceeding, their parentage action is time-barred under the applicable statute of limitations. As such, no determination could be made by the probate court regarding whether the decedent is the natural father of the appellants so as to allow appellants to inherit under the laws of intestate succession.

{¶ 24} Insofar as appellants contend that the limitation period in R.C. 3111.05 violates their constitutional rights, the Ohio Supreme Court in *Wright v. Oliver*, 35 Ohio St.3d 10, 517 N.E.2d 883 (1988), applied this five-year statute of limitations in deciding a parentage action between a mother and an alleged father, and unquestionably found that R.C. 3111.05 is constitutional.

> There is no question regarding the constitutionality of this statute. The R.C. 3111.05 limitations period avoids the equal protection infirmities of shorter limitations periods, which the United States Supreme Court declared unconstitutional in *Mills v. Habluetzel* (1982), 456 U.S. 91, and *Pickett v. Brown* (1983), 462 U.S. 1. It also recognizes a child's right to paternal support throughout his or her minority and protects the state's interest in enforcing a father's duty to support illegitimate as well as legitimate children. *See Johnson v. Norman* (1981), 66 Ohio St. 2d 186, 20 O.O. 3d 196, 421 N.E. 2d 124; *Franklin v. Julian* (1972), 30 Ohio St. 2d 228, 59 O.O. 2d 264, 283 N.E. 2d 813.

*Id.* at 11, fn 1. Accordingly, until otherwise determined, the statute of limitations contained in R.C. 3111.05 is constitutional.

## III. Conclusion

{¶ 25} Because appellants are not named as beneficiaries under the decedent's will, and they would not inherit under the laws of intestate succession,

the probate court properly found that appellants are not "persons interested" to have standing to bring a will contest action. As such, the court lacked jurisdiction over the matter and properly dismissed the case.

{¶ 26} The facts of this case are quite concerning, and unfortunately, this court cannot afford appellants the relief they are requesting. This court sympathizes with appellants, but until the General Assembly either changes the statute of limitations or creates an avenue to allow alleged natural-born children who have been socially recognized and known to the decedent or his heirs to obtain or establish the parent-child relationship beyond the existing statute of limitations, this court is bound by the laws as written.

{¶ 27} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

FRANK D. CELEBREZZE, JR., P.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 28} I respectfully dissent with the majority opinion. I would find that R.C. 3111.05, the Ohio Parentage Act's statute of limitations, is fundamentally unfair to natural born children who wish to legally establish a parent-child relationship. Specifically, children born out of wedlock who want to establish a legally recognized parent-child relationship with their biological father need an extended statute of limitations beyond the current threshold of five years after the age of majority.

{¶ 29} I propose that Ohio's Parentage Act, R.C. 3111, et seq., places unreasonable expectations on persons under the age of 23. These individuals are expected to have the wherewithal and mental acuity to understand the merits of legally declaring a parent-child relationship and to have the financial means to secure counsel that will help them facilitate the proceedings. Further, the current statute of limitations ignores that some children may not learn the identity of their biological parent prior to the children turning 23 years of age. Young individuals need additional time within which they can legally establish the parent-child relationship. Such a mechanism is employed in the juvenile context to provide minor victims of sexual abuse an extended statute of limitations, and I recommend adopting a similar extension of time here. *See* R.C. 2305.111(C) (a claim of childhood sexual abuse shall be filed within 12 years after the child reaches the age of majority).

{¶ 30} Here, appellants offer an affidavit from their mother, birthday cards from the decedent, and their names listed in the decedent's obituary to support their parentage claim. Additionally, the decedent named the appellants as beneficiaries

to his supplemental State Teachers Retirement System's pension. It is argued that the appellants were held out publicly as the biological daughters of the decedent. Yet, because the appellants did not legally establish a parent-child relationship before the age of 23, the current law prevents them from potentially inheriting their rightful shares of their father's estate. It is difficult to accept that the current law is in the best interest of the appellants and the large pool of similarly situated natural born children who must demonstrate a certain level of savviness at a relatively young age or forever be blocked from seeking and establishing a legally binding parent-child relationship.[6]

{¶ 31} For these reasons, I respectfully dissent.

---

[6] Our parentage laws have a potentially wide-sweeping impact since in 2019 forty percent of the children born in the United States of America were born out of wedlock. National Vital Statistics Reports, Vol. 70, No. 2, March 23, 2021, p.6.