RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

KIM ARLENE CARROLL,

                      *Plaintiff-Appellant*,

    *v.*

EVA ARLENE HILL, individually and as former Executrix of the Estate of Albert P. Barber; MICHELLE BARBER; WILLIAM A. BARBER; WILLIAM D. BARBER; GEAUGA COUNTY PARK DISTRICT,

                      *Defendants-Appellees.*

No. 21-3885

─────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cv-01833—J. Philip Calabrese, District Judge.

Decided and Filed:  June 16, 2022

Before:  SUTTON, Chief Judge; COLE and DONALD, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Aanchal Sharma, Mark M. Mikhaiel, SCHNEIDER SMELTZ SPEITH BELL LLP, Cleveland, Ohio, for Appellant.  Philip D. Williamson, Julia B. Meister, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, David H. Wallace, TAFT STETTINIUS & HOLLISTER LLP, Cleveland, Ohio, for the Hill and Barber Appellees.  Todd C. Hicks, Bridey Matheney, THRASHER, DINSMORE & DOLAN, LPA, Chardon, Ohio, for Appellee Geauga Park District.

─────────────

## OPINION

─────────────

SUTTON, Chief Judge.  Kim Carroll claims that Arlene Barber submitted an invalid version of her brother Albert Barber's will to an Ohio probate court.  Roughly 20 years after the

court probated the will, Carroll allegedly learned that Albert was her father. That prompted Carroll to file this lawsuit, claiming that she should have inherited Albert's estate. The district court concluded that she lacked standing and that the probate exception to federal jurisdiction barred it from hearing her claims. We affirm for lack of standing.

Born in 1967, Carroll was raised by a single mother. Her birth certificate listed her biological father as "Wallace Hopper Lee." R.1 at 4. But Carroll never met anyone by that name. Save for a two-year period when she lived with another family, Carroll lived with her mother throughout her childhood.

Carroll and her mother lived near property owned by a man named Albert Barber. They spent a good deal of time with Albert during Carroll's childhood. Carroll also got to know Albert's younger sister, Arlene.

Albert died in 1998. Arlene administered his estate. In 2000, Arlene informed the Geauga County Probate Court that she had lost Albert's will and possessed only an unsigned copy. She filed an application to probate the will. The court found that all interested parties were given appropriate notice and admitted the will. The court distributed most of the estate—land worth $232,000 and slightly over $30,000 in other assets—to Arlene under the will.

Since the disposition of the estate in the early 2000s, Arlene has disposed of the land she received under the will. In 2003, she transferred a parcel to the Geauga County Park District. In July 2018, she transferred the rest to William A. Barber, the son of her brother William R. Barber. Carroll alleges that suspicious circumstances swirled around this last transaction: that William A.'s son prepared a quitclaim deed to transfer the property, that the transfer occurred while Arlene was in the hospital following emergency surgery, and that four months later a court ruled that Arlene suffered from dementia, leaving her unable to handle her affairs.

A month after this transfer, according to Carroll, Arlene told her that Albert was her father. Arlene allegedly knew the truth all along but concealed it.

In August 2020, Carroll sued Arlene, William A. Barber, his wife, his son, and the Geauga County Park District in federal court. Carroll raised 13 claims under Ohio law, alleging

that Arlene swindled her out of an inheritance and that the other Barber family members wrongfully obtained property from Arlene. Now a citizen of South Carolina, Carroll invoked the federal court's diversity jurisdiction.

The district court dismissed the lawsuit. It concluded that Carroll lacked standing to file the lawsuit and that the probate exception to diversity jurisdiction barred the claims.

We start and stop with standing. To establish standing under Article III of the U.S. Constitution, a plaintiff must establish (1) an injury, (2) that results from the defendant's conduct, and (3) that a court can redress. *Gerber v. Herskovitz*, 14 F.4th 500, 505 (6th Cir. 2021). To fulfill the injury requirement, a plaintiff must allege she has suffered a concrete and individualized violation of a legally protected interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 & n.1 (1992). A defendant's alleged misconduct must "personally harm the plaintiff." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

Carroll has not plausibly pleaded that the Barbers' misconduct injured her, that they left her any worse off. The heart of her claim is that Arlene deprived her of an opportunity to contest Albert's will. But even assuming the truth of all these allegations, she would not have been eligible to contest Albert's will when he died.

Ohio law shows why. Even if Arlene had notified Carroll of her relationship with Albert at the time he died, that revelation would have come too late. Under Ohio probate law, Carroll could not have contested the will during probate proceedings in 2000 unless she first brought a parentage action establishing Albert as her father within the permitted time—five years after turning 18—for doing so. *Steinberg v. Cent. Tr. Co.*, 247 N.E.2d 303, 305 (Ohio 1969) (holding that a party may contest a will only if she stands to benefit from its invalidation); *Brookbank v. Gray*, 658 N.E.2d 724, 727 (Ohio 1996) (explaining the limited methods by which a child born out of wedlock may establish paternity for purposes of inheriting from an intestate father); *Powell v. Williams*, 185 N.E.3d 595, 599–600 (Ohio Ct. App. 2022); *Byrd v. Trennor*, 811 N.E.2d 549, 553 (Ohio Ct. App. 2004); *In re Est. of Hicks*, 629 N.E.2d 1086, 1088–89 (Ohio Ct. App. 1993); *Beck v. Jolliff*, 489 N.E.2d 825, 829 (Ohio Ct. App. 1984).

By the time Albert died, however, Carroll no longer had this option. Ohio required her to initiate paternity proceedings before she turned 23. Ohio Rev. Code § 3111.05. Albert died when Carroll was 31. Arlene's failure to notify her about her relationship with Albert in the end merely deprived Carroll of the experience of losing a claim in the Ohio courts.

Had Arlene told Carroll earlier, it is true, she might have filed a parentage action before she turned 23. But that is not her claim. She objects only to Arlene's failure to inform her at the time Albert died. And she has not pleaded that she would have filed a parentage action if she had learned the truth before the limitations period expired. If a plaintiff lacks the ability to take advantage of an opportunity, the deprivation of that opportunity does not count as an injury under Article III. *Carney v. Adams*, 141 S. Ct. 493, 500–01 (2020); *Aiken v. Hackett*, 281 F.3d 516, 519–20 (6th Cir. 2002); *Beztak Land Co. v. City of Detroit*, 298 F.3d 559, 565–68 (6th Cir. 2002).

Carroll resists this conclusion on the ground that failure to prove paternity does not bear on whether she pleaded an injury. The complaint alleges that Albert is her father, she stresses, and we must assume the truth of that allegation at this juncture. True enough. But her ability to contest Albert's will—the centerpiece of any injury—turns on whether she has legally established he is her father, not whether she shares his DNA. It's their legal relationship, not biological relationship, that would make her eligible to obtain relief.

Carroll adds that she did not learn the truth until 2018, noting that a fraud claim does not accrue until the victim reasonably should have discovered the wrongdoing. But this argument does not come to grips with the defect in her complaint. The problem is not that the statute of limitations bars her fraud claim. It is that the statute of limitations bars a parentage claim. Had Carroll tried to contest Albert's will in 2000, the Ohio courts would have ruled that the time for filing a paternity action had come and gone, leaving her with no cognizable injury today.

That Carroll alleges a monetary injury does not change things. Yes, this kind of injury amounts to "a prototypical form of injury in fact." *Collins v. Yellen*, 141 S. Ct. 1761, 1779 (2021). But this argument merely converts Carroll's injury-in-fact problem into a traceability problem. Traceability requires Carroll to show a "causal connection" between her financial

injury and the Barbers' conduct. *Lujan*, 504 U.S. at 560.  Even if Arlene had told Carroll upon Albert's death that he was her father, Carroll would not have been able to contest the will for the reasons just laid out.  Because she would have suffered the same financial injury regardless of what the Barbers did, she cannot establish that this injury flows from their conduct. *Warth v. Seldin*, 422 U.S 490, 504 (1975).

Having affirmed the district court's decision to dismiss this case for lack of standing, we need not resolve whether the probate exception to Article III separately deprives us of jurisdiction over these claims.

We affirm.