[Cite as *Ehman v. Harvey*, 2023-Ohio-1129.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

JILL EHMAN,                           :

    Plaintiff-Appellant,         :   Case No.  21CA13

    v.                            :

NATHAN HARVEY, ADMINISTRATOR  :   DECISION AND JUDGMENT ENTRY
    OF THE ESTATE OF JASON
    HALON SHEPPARD,               :

    Defendant-Appellee.          :

_____

APPEARANCES:

Andrew J. Noe, Gallipolis, Ohio, for Appellant. [1]

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:3-28-23
ABELE, J.

{¶1}  This is an appeal from a Gallia County Common Pleas Court, Juvenile Division, dismissal of a complaint to establish a father-child relationship filed by Jill Shinn Ehman, plaintiff below and appellant herein.

{¶2}  Appellant assigns one error for review:

> "THE TRIAL COURT ERRED IN DISMISSING
> APPELLANT'S COMPLAINT BASED UPON OHIO
> REVISED CODE 3111.05, AS OHIO REVISED CODE
> 3111.05 ACTS AS A STATUTE OF LIMITATIONS AND
> THE STATUTE OF LIMITATIONS WAS NEVER RAISED
> AS A DEFENSE BY THE DEFENDANT IN THIS

[1] Appellee did not file a brief or enter an appearance in this appeal.

ACTION.  THEREFORE THE AFFIRMATIVE DEFENSE
OF STATUTE OF LIMITATIONS WAS WAIVED."

{¶3} On October 29, 2020, appellant filed a complaint to establish a father-child relationship.  Appellant, born October 8, 1961 to mother Frankie Lou Lucas (aka Frankie Lou Shinn), alleged that she is the biological child of Jason Halon Sheppard.  The estate administrator (appellee) answered and acknowledged the possibility that Sheppard, now deceased, is indeed appellant's biological father.  Appellant's biological mother's affidavit states that, although appellant's birth certificate listed Frankie's spouse at the time of appellant's birth, James Shinn as appellant's father, Shinn is not appellant's biological father.  Rather, Frankie averred that (1) she had an affair with Sheppard, (2) no paternity testing occurred, and (3) Sheppard had never been established as appellant's biological father.

{¶4} At the trial court's April 29 and July 30, 2021 hearing, appellant testified that, although no DNA testing occurred, she had a relationship with Sheppard.  Recently, appellant also completed an Ancestry.com DNA test and has no DNA match with any Shinn relatives.  When the court asked appellant why she waited so long to come forward, appellant responded, "You know, I honestly * * * it never occurred to me because * * * it wasn't important enough to do something formal.  Um, you

know I was satisfied that he was my dad um, because he confirmed it to me verbally." Appellant further stated, "I asked him point blank, I said so um, you know, what, do you have any other children? Uh, am I the only one overall? And he said you're the only one."

{¶5} Appellant's biological mother testified she met Sheppard in 1948 and they dated until he left for college. Frankie met and married James Shinn in 1950. Their marriage lasted 64 years, but produced no children. Frankie also continued to see Sheppard during her marriage. When Frankie informed Sheppard about the pregnancy, he "was elated and wanted me to divorce my husband and bring my baby and his baby and come to him." Frankie also took appellant to Sheppard's home where his mother "took care of her and held her and loved her and so did Jason." Frankie also informed her husband of her pregnancy and "He was terribly upset and threatened me, but yet he, he didn't want me to leave. But I tried to anyway different times." Frankie stated that, although she told appellant about Sheppard, Shinn's name appears on appellant's birth certificate.

{¶6} Attorney Robert Jenkins testified that he knew Sheppard and "sometime in the 1970's maybe Sheppard came to his office and said "that some girl claimed that he is the father of her child." Jenkins drafted a release "for a lump sum payment the mother of the child would say that he was not the father"

and "would take that as a complete settlement for any possibility that he may have been the father." Sheppard, however, did not identify the woman and Jenkins did not know what Sheppard did with the document. Other witnesses included postal worker John McClintock and Sheppard's friend, David Blake.

{¶7} Estate Administrator Nathan Harvey testified that friends of Jason Sheppard informed him that Sheppard did have a biological daughter, but had no information about her identity. Harvey attempted to collect items for a DNA analysis, but insufficient material existed to produce a comparison sample. Also, Sheppard's cremation hampered the effort to obtain a sample.

{¶8} After hearing the evidence, the magistrate's September 28, 2021 recommendation noted that, although the evidence is "compelling in many ways," R.C. 3111.05 prohibits bringing this action "later than five years after the child reaches the age of eighteen." The magistrate cited multiple witnesses who testified, but wrote:

> the knowledge that the decedent was Plaintiff's father had been known for several decades. In fact, Plaintiff indicated that she had knowledge of this when she was still a minor. Plaintiff's Mother, indicated that she knew all along that it was decedent. Even if the Court read the statute in light of when Plaintiff received 'knowledge' of the potential Father-Child relationship, that knowledge was gained several decades ago.

The magistrate also cited *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 6: "A juvenile court has jurisdiction to award retroactive child support payments to an adult emancipated child if a parentage action is filed prior to the child's 23d birthday. [R.C. 3111.05 and 3111.13(C), construed.]" *Id.* at syllabus.  Consequently, the magistrate recommended the complaint's dismissal.

{¶9}   The trial court later adopted the magistrate's recommendation and dismissed the complaint.  The court wrote:

> Although the evidence was compelling, the Court remains concerned about the length of time it took Plaintiff to file this action.  Especially given the friendly nature between Plaintiff and the Decedent that was testified about.  Nothing prevented the Plaintiff and Decedent from obtaining genetic tests and establishing some formal documentation prior to his death.  It wasn't until the alleged father's death and the Decedent's estate being opened until this action was filed.

This appeal followed.

I

{¶10} In her sole assignment of error, appellant asserts that the trial court erred when it dismissed her complaint.  In particular, appellant argues that the estate waived any statute of limitations issue when it did not raise that issue as an affirmative defense.

{¶11} The Ohio Parentage Act, R.C. Chapter 3111, provides a mechanism for a child born out of wedlock to establish a parental relationship.  In Byrd v. Trennor, 157 Ohio App.3d 358,

2004-Ohio-2736, 811 N.E.2d 549 (2nd Dist.) at paragraph 28-31,

the court engaged in an interesting discussion about the ability

of illegitimate children to inherit from their biological

fathers:

> " Although R.C. 2105.17 allows illegitimate children to inherit from their mothers, illegitimate children can inherit from their fathers under R.C. 2105.06 only if paternity is established prior to the death of the father. See In re Estate of Hicks (1993), 90 Ohio App.3d 483, 487, 629 N.E.2d 1086. Illegitimate children can inherit from their fathers if it is shown that affirmative steps were taken by their father, which could include (1) marrying the child's mother; (2) providing for the child in will; (3) adopting the child; (4) acknowledging the child pursuant to R.C. 2105.18; or (5) designating the child as his heir at law pursuant to R.C. 2105.15. Birman v. Sproat (1988), 47 Ohio App.3d 65, 66, 546 N.E.2d 1354, citing White v. Randolph (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333. Where the parent-child relationship is established prior to the father's death, no differentiation is to be made in the rights of children based upon whether they were born in or out of wedlock. Id.

> Byrd concedes that the parent-child relationship was not established prior to the death of her father. Byrd admits in her petition that her mother and father were never married. Byrd made no showing that her father left a will providing for her and stipulated that, in fact, she did not know whether her father left a will. Byrd also stipulated that her father never adopted her, that her father never acknowledged her, and that her father did not designate her as an heir at law. Therefore, Byrd failed to establish that she fell into one of the five categories, set forth by law, that would legitimize her.

> Illegitimate children may also inherit from their fathers if they prove that they are "children," within the meaning of R.C. 2105.06, by bringing a parentage action under R.C. 3111.04 to determine the father-child relationship. In re Estate of Hicks, 90 Ohio App.3d at 488. "R.C. Chapter 3111 does not require a parentage

action to be brought before the death of the father."
Id. at 486. Thus, the only way Byrd could affirmatively
seek relief would be under the Ohio Parentage Act, R.C.
Chapter 3111. However, a probate court does not have
jurisdiction to hear a parentage action under R.C.
Chapter 3111. Id. at 488, citing Martin v. Davidson
(1990), 53 Ohio St.3d 240, 559 N.E.2d 1348. Byrd brought
this action in the Clark County Probate Court. Byrd may
not seek such a declaration in the probate court.

In White v. Randolph (1979), 59 Ohio St.2d 6, 13
O.O.3d 3, 391 N.E.2d 333, the Ohio Supreme Court upheld
the constitutionality of the different treatment of
illegitimate children of intestate fathers, as against
an equal protection challenge, citing "the difficulty of
proving paternity and the possibility of fraudulent
assertions of paternity upon the estate of the decedent"
as justifying a finding that the different treatment in
the Ohio intestate succession statute is substantially
related to the important state interest in the just and
orderly disposition of property at death. Id. at 11, 13
O.O.3d 3, 391 N.E.2d 333."

Thus, a child may, inter alia, bring an action to determine the

existence of a father-child relationship under R.C. 3111.04.

However, pursuant to R.C. 3111.05 the action must be filed

within five years after the child reaches the age of majority:

An action to determine the existence or nonexistence of
the father and child relationship may not be brought
later than five years after the child reaches the age of
eighteen.  Neither section 3111.04 of the Revised Code
nor this section extends the time within which a right
of inheritance or a right to a succession may be asserted
beyond the time provided by Chapter 2105., 2107, 2113,
2117, or 2123, of the Revised Code.

{¶12} Appellant cites *Collins v. Nurre*, 20 Ohio App.2d 53,

251 N.E.2d 621, in support of her argument that the trial court

erroneously dismissed her complaint because the estate failed to

raise R.C. 3111.05 as an affirmative defense.  *Collins,* which

involved the statute of limitations for a will contest, held: "The running of a pure statute of limitations does not extinguish the right nor extinguish the jurisdiction of the court over the subject matter but merely bars the remedy which in certain cases is subject to being revived, and subject to being waived." *Id.* at 54. Appellant also argues that *Jones v. Suster,* 84 Ohio St.3d 70, 701 N.E.2d 1002 (1998), held that the expiration of a statute of limitations does not deprive a court of jurisdiction. *Id.* at 75. The court held that a statute of limitations is an affirmative defense and is waived unless pled in a timely manner, and, if not pled, a court with subject matter jurisdiction may proceed with the case. *Id.* at 75, citing *Lewis v. Trimble*, 79 Ohio St.3d 231, 680 N.E.2d 1207 (1997). Additionally, appellant cites this court's conclusion in *Schultheiss v. Heinrich Enterprises*, 57 N.E.3d 361, 2016-Ohio-121 (4th Dist.) that defendants forfeit their right to raise laches and statute of limitations as affirmative defenses when they failed to raise them in a motion or answer or amended answer. ¶ 22.

{¶13} Recent parentage cases have also addressed their jurisdictional issue. In *Powell v. Williams,* 2022-Ohio-526, 185 N.E.3d 595 (8th Dist.), Williams died testate in 2019 and, in 2020, plaintiffs contested his will and claimed to be the decedent's daughters. The probate court dismissed the complaint

because the R.C. 3111.05 statute of limitations had expired.  On appeal, the Eighth District affirmed and observed that "no assertion has been made that either of the appellants are 23 years old or younger."  Therefore, "even if appellants properly brought a parentage action through the will-contest proceeding, their parentage action is time-barred under the statute of limitations."  *Id.* at ¶ 23.  Thus, the probate court could make no determination regarding whether the decedent is the natural father of the appellants so as to allow them to inherit under intestate succession.  *Id.*

{¶14} In *Carroll v. Hill*, 37 F.4th 1119 (6th Cir.2022), the decedent died in 1998 and his sister informed the court in 2000 that she lost her brother's will, but possessed an unsigned copy.  After sister filed an application to probate the will, the probate court found that all interested parties received appropriate notice, admitted the will, and distributed most of the estate to the sister.  *Id.* at 1120-1120.  In the early 2000s, the sister disposed of land she received under the will.  Later, the sister told plaintiff that the decedent was also her father.  *Id.*  Plaintiff sued sister and others, but the district court dismissed the action and determined that plaintiff lacked standing to file the action.  On appeal, the Sixth Circuit concluded that plaintiff would not have been eligible to contest the will because Ohio law requires a paternity action to be

commenced no later than five years after reaching 18 years of age, and plaintiff reached 31 years of age at the time of decedent's death. *Id.* at 1121-1122.

**{¶15}** Appellee argues that the trial court acted improperly in the case sub judice because the court dismissed the complaint on statute of limitations grounds, even though the appellee did not explicitly request a dismissal on that basis. However, we recognize that under certain circumstances, courts may sua sponte dismiss complaints.

**{¶16}** In *Baker v. Scheetz*, 10th Dist. Franklin No. 18AP-655, 2019-Ohio-685, the appellant similarly argued that the trial court improperly sua sponte dismissed a complaint based upon the expiration of the applicable statute of limitations. The Baker court noted that the Rules of Civil Procedure neither expressly permit, nor forbid courts to sua sponte dismiss complaints. Citing *Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 647 N.E.2d 799. The court stated that a sua sponte dismissal may be appropriate when a complaint is frivolous or the claimant obviously cannot prevail on the facts alleged in the complaint. Moreover, in *Thomas v. Farmers Bank and Sav. Co.*, 4th Dist. Meigs No. 00CA17, 2001-Ohio-2533 (July 30, 2001), this court recognized that a sua sponte dismissal of a complaint may be appropriate if the claimant obviously cannot prevail based upon the facts alleged in the complaint.

{¶17} A dismissal of a complaint tests the sufficiency of the complaint. Civ.R. 12(B). For an appellate court, the standard of review of a dismissal, after viewing the face of the complaint and construing it in the most favorable light, is de novo. *Greely v. Miami Valley Maintenance Contractors, Inc.* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). Under this standard, it must appear beyond doubt from the complaint, and after accepting all allegations in the complaint to be true, that the plaintiff can prove no set of facts to support a claim for recovery.

{¶18} In the case sub judice, we further recognize that the trial court did not dismiss appellant's complaint prior to a trial, but instead after a full evidentiary hearing that provided the parties an opportunity to present evidence. After considering the allegations set forth in the complaint, along with the evidence adduced at the hearing, the trial court determined that a nearly 60-year-old plaintiff obviously could not establish a father-child relationship in light of the applicable statute of limitations. Here, we agree with the trial court's conclusion that appellant filed her complaint well beyond the time frame set forth in R.C. 3111.05.

{¶19} We recognize that this result may appear to be harsh. However, as the Eighth District observed, "until the General Assembly either changes the statute of limitations or creates an avenue to allow alleged natural-born children who have been

socially recognized and known to the decedent or his heirs to obtain or establish the parent-child relationship beyond the existing statute of limitations, this court is bound by the laws as written." *Powell* at ¶ 26.  Moreover, appellant could have possibly acted prior to Sheppard's death to use alternative means to establish their relationship.  See *Byrd*, *supra*.

{¶20} Accordingly, based upon the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.