RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0025p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

AUTUMN WIND LENDING, LLC,

　　　　　　　*Plaintiff-Appellant*,

　　*v.*

ESTATE OF JOHN J. SIEGEL, deceased, by and through
the Executor or Personal Representative; CECELIA
FINANCIAL MANAGEMENT, LLC; HALAS ENERGY,
LLC; OASIS AVIATION LLC,

　　　　　　　*Defendants-Appellees*.

> No. 23-5476

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:22-cv-00255—Rebecca Grady Jennings, District Judge.

Decided and Filed: February 8, 2024

Before: COLE, GILMAN, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Robert M. Hirsh, Michael A. Kaplan, Rasmeet K. Chahil, LOWENSTEIN
SANDLER LLP, New York, New York, for Appellant. David M. Cantor, William P. Harbison,
Joseph H. Haddad, SEILLER WATERMAN, LLC, Louisville, Kentucky, for Appellees.

───────────────

## OPINION

───────────────

RONALD LEE GILMAN, Circuit Judge. Insight Terminal Solutions, LLC (Insight)
brought an adversary proceeding in bankruptcy court against all the defendants named in this
lawsuit, alleging claims that were dismissed with prejudice by the bankruptcy court based upon
the parties' stipulation to do so. Autumn Wind Lending, LLC (Autumn Wind) was not itself a

party to the adversary proceeding, but it became the parent company of Insight prior to Insight initiating its lawsuit in the bankruptcy court.

The question before us is whether the doctrine of res judicata bars Autumn Wind from now bringing these same claims against the same defendants who were absolved of liability to Insight as part of the bankruptcy court proceedings. For the reasons set forth below, we **REVERSE** the judgment of the district court dismissing Autumn Wind's claims on the basis of res judicata and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

In September 2018, Autumn Wind and Insight entered into a loan and security agreement (the Agreement). Autumn Wind initially agreed to lend Insight $6,800,000, and later amended the Agreement to lend an additional $300,000. Insight represented to Autumn Wind, as part of the Agreement, that it did not have any existing indebtedness, and it agreed not to incur any future debt while the loan was outstanding without Autumn Wind's consent.

Insight failed to repay the loan when it matured in June 2019. Shortly thereafter, Insight filed for bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky.

John J. Siegel, now deceased, was the manager of Insight prior to its bankruptcy. He also served as the manager of three family enterprises, Cecelia Financial Management, LLC (Cecelia), Halas Energy, LLC (Halas), and Oasis Aviation, LLC (Oasis), each of which filed a proof of claim in the bankruptcy proceedings. Cecelia claimed $6,044,190.20 for money loaned, Halas claimed $37,828.57 as reimbursement charges, and Oasis claimed $6,737.73 for travel expenses. Each claim represented debts that Insight had incurred in violation of its Agreement with Autumn Wind.

In April 2020, Autumn Wind submitted a Chapter 11 reorganization plan to the bankruptcy court, which the court confirmed. The confirmed plan transferred all equity interest in Insight to Autumn Wind, thus making Insight a wholly owned subsidiary of Autumn Wind. Insight then filed an adversary complaint in the bankruptcy court in April 2021. The adversary complaint primarily sought recharacterization, disallowance, and/or reduction of the proofs of

claims filed.    But Insight also sought damages based on allegations of fraudulent misrepresentation by Siegel and tortious interference by Siegel, Cecelia, Halas, and Oasis.  All parties later stipulated, in September 2021, to dismiss the fraudulent-misrepresentation and tortious-interference claims with prejudice.

Although Autumn Wind was never a party to the bankruptcy adversary proceeding, it was the parent company of Insight for the entirety of the proceeding.  Autumn Wind nevertheless brought a separate suit in the United States District Court for the Southern District of New York in February 2022, asserting fraud against Siegel and tortious interference against Siegel, Cecelia, Halas, and Oasis (collectively, the Defendants).  The lawsuit was transferred to the United States District Court for the Western District of Kentucky, and Autumn Wind later filed an amended complaint naming the executor of Siegel's estate after Siegel died.

In June 2022, the Defendants jointly moved to dismiss the complaint, arguing that Autumn Wind's claims were barred by the res judicata effect of the bankruptcy court's adoption of Autumn Wind's reorganization plan.  The district court denied the motion.  Meanwhile, the bankruptcy court partially granted Insight's motion for summary judgment by disallowing the proofs of claim filed by Halas and Oasis, but it held a bench trial on Cecelia's proof of claim. On the same day that the district court denied the Defendants' motion to dismiss, the bankruptcy court entered a final judgment against Insight that allowed the Cecelia claim.  The bankruptcy court's final judgment incorporated the September 2021 stipulation between the parties to dismiss with prejudice Insight's fraudulent-misrepresentation and tortious-interference claims against the Defendants.

Soon thereafter, the Defendants filed a motion in the district court for reconsideration of their denied motion to dismiss, arguing that Autumn Wind's claims were now barred by the res judicata effect of the bankruptcy court's final judgment.  The district court agreed.  It then dismissed the complaint, concluding that the Defendants had met their burden of proving that all the elements of res judicata had been satisfied.  This timely appeal followed.

## II.  ANALYSIS

**A.  The entry of final judgment in the bankruptcy court does not preclude Autumn Wind's claims**

"Pursuant to the doctrine of res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  Autumn Wind argues that the district court erred in concluding that the doctrine applies to Autumn Wind's present lawsuit.  Specifically, Autumn Wind contends that its claims are not barred because only one of the elements of res judicata is met.

We review de novo the district court's application of res judicata.  *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002).  "The party asserting the defense of res judicata bears the burden of proof."  *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008).  To succeed on a res judicata defense, the proponent must prove each of the following elements:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction; 2. The second action involves the same parties, or their privies, as the first; 3. The second action raises an issue actually litigated or which should have been litigated in the first action; 4. An identity of the causes of action.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (internal citations omitted).

Autumn Wind and the Defendants agree that the first element is satisfied because the parties stipulated to the dismissal of Insight's tortious-interference and fraud claims with prejudice, but they dispute the remaining elements.  The failure to prove any element renders the application of res judicata inappropriate.  *Browning*, 283 F.3d at 771.  Because we conclude that the Defendants cannot establish the third element, Autumn Wind's claims are not barred by res judicata.  We will therefore address only the third element.

That element requires a showing that "[t]he second action raises an issue actually litigated or which should have been litigated in the first action." *Sanders*, 973 F.2d at 480. Autumn Wind argues that it could not have brought its claims in the adversary proceeding because the bankruptcy court lacked subject-matter jurisdiction to hear them.  Before reaching

the question of whether Autumn Wind should have brought claims in its own name in the bankruptcy court, however, we consider the effects of Insight's September 2021 stipulated dismissal of its claims with prejudice. If, after all, as the district court concluded, Insight is a privy of Autumn Wind, then Autumn Wind would be bound by any res judicata effect of Insight's actions.

We conclude that Insight's stipulated dismissal with prejudice does not bar Autumn Wind's present claims despite the district court's observation that a stipulated dismissal with prejudice "operates as a final adjudication on the merits." *See Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001). Contrary to the district court's understanding, the stipulated dismissal goes only to the first element of res judicata; it does not mean that the claims were "actually litigated" or "should have been litigated." *See Sanders*, 973 F.2d at 480. "An issue is actually litigated when it 'is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *In re Leonard*, 644 F. App'x 612, 616 (6th Cir. 2016) (quoting Restatement (Second) of Judgments § 27 cmt. *d* (Am. L. Inst. 1982)).

The issues underlying Insight's purported claims against Siegel, Cecelia, Halas, and Oasis were never determined by the bankruptcy court; rather, the dismissal was effective by virtue of the parties' stipulation, without any contestation or litigation and without any judicial action. *See Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 540 (6th Cir. 2013) (quoting *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997)) (highlighting that stipulations of dismissal are "'self-executing' and do 'not require judicial approval'"); *see also Levi Strauss Co. v. Abercrombie & Fitch Trading Co.*, 719 F.3d 1367, 1372–73 (Fed. Cir. 2013) (noting that a stipulated dismissal with prejudice counts as an adjudication on the merits but does not count as the actual litigation of any issue); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4435 (3d ed. Aug. 2023 update) ("A stipulated dismissal with prejudice operates as an adjudication on the merits for claim-preclusion purposes, but ordinarily should not of itself count as the actual adjudication of any issue."); *cf. Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501 (2001) (cautioning against the assumption that "all judgments denominated 'on the merits' are entitled to claim-preclusive effect").

Nor *should* Insight have litigated these claims in the adversary proceeding.  Insight was not the proper party to seek damages from the Defendants because Autumn Wind, not Insight, was the entity that allegedly suffered the injury as a result of Insight breaching the terms of the Agreement.  *See Carroll v. Hill*, 37 F.4th 1119, 1121 (6th Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)) ("A defendant's alleged misconduct must 'personally harm the plaintiff.'").  Insight itself was not harmed when the Defendants loaned money to Insight because Insight was obviously a willing participant.  Insight was not forced to incur the additional debt, nor was it misled by Siegel.  Instead, Siegel served as the manager of Insight when the company took on the debt, and thus Insight knew that accepting the new financing would violate the Agreement.  In sum, Insight had no cause of action against the Defendants for the fraud and tortious-interference claims to begin with.

That leaves the question:  should Autumn Wind have litigated these claims in the adversary proceeding?  Autumn Wind argued in its district-court briefing that, because it was not a party to the adversary proceeding, its claims could not have been litigated in the bankruptcy court.  In its briefing on appeal, Autumn Wind now asserts that because Insight was the debtor, the bankruptcy court lacked subject-matter jurisdiction over Autumn Wind's claims.  The Defendants assert that Autumn Wind has forfeited that argument by failing to raise it before the district court.  Despite these different rationales, however, "as long as a claim or issue was raised before the district court, a party may 'formulate any argument it likes in support of that claim here.'"  *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 468 (6th Cir. 2022) (cleaned up) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534–35 (1992)).  Challenging the subject-matter jurisdiction of the bankruptcy court "is merely an argument in support of" Autumn Wind's basic position regarding this third element of res judicata.  *See id.*

We thus conclude that Autumn Wind has not forfeited its argument on appeal, leaving us free to address the merits of the issue.  We agree with Autumn Wind that it could not have brought its claims in the adversary proceeding on its own behalf.  Indeed, as Autumn Wind now recognizes, "[Insight] dismissed Count VII of its Complaint in the Adversary Proceeding as those claims belonged to [Autumn Wind] (a non-debtor), not [Insight]."

In response, the Defendants argue that the bankruptcy court would have had supplemental jurisdiction under 28 U.S.C. § 1367 over Autumn Wind's claims. Autumn Wind replies that whether bankruptcy courts may exercise supplemental jurisdiction is an open question in the Sixth Circuit, noting that most federal courts have determined that bankruptcy courts lack such jurisdiction.

The claims raised by Insight in the adversary proceeding and by Autumn Wind in the present case are nearly identical. Count VII of Insight's adversary complaint alleged that Siegel committed fraud by concealing Insight's then-existing indebtedness when the Agreement was entered into by Autumn Wind. In the present complaint, Autumn Wind alleges that Siegel fraudulently misrepresented Insight's indebtedness, thereby inducing Autumn Wind to enter the Agreement. The adversary complaint further alleged that the Defendants tortiously interfered with Insight's performance under the Agreement by impermissibly increasing Insight's indebtedness. Similarly, the present complaint alleges that the Defendants tortiously interfered with Insight's performance of its obligations under the Agreement by causing Insight to take on additional debt without Autumn Wind's consent.

The reason for this near identity of pleadings is due to the adversary complaint comingling the claims of Autumn Wind and Insight without recognizing the corporate separateness of these two entities. Although the stipulation in the bankruptcy court does not detail why Insight agreed to dismiss Count VII of its adversary complaint, the record leaves little doubt that Autumn Wind and Insight belatedly came to the realization that the claims belong solely to Autumn Wind. Autumn Wind's present complaint concedes this point by noting that the parties to the adversary proceeding in the bankruptcy court stipulated to the dismissal of Insight's claims because "[Autumn Wind]'s claims against Defendants have not, and will not be resolved as part of the Bankruptcy action."

Contrary to the Defendants' contentions, Autumn Wind could not have pursued such claims in the adversary proceeding because Autumn Wind and the Defendants are both creditors of Insight, and the bankruptcy court lacks related-to jurisdiction to adjudicate a prepetition dispute between these two creditors that would have no conceivable effect on the bankruptcy estate. *See Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir.

1992) ("[A] bankruptcy court would not hear a case between two creditors based on their prior dealings independent of the debtor."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1140–42 (6th Cir. 1991) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 129 (1995)) (concluding that a proceeding is within a bankruptcy court's related-to jurisdiction only if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy"). Moreover, the conceivable-effect test applies only to related-to jurisdiction, and the Defendants acknowledge that neither arising-under nor arising-in jurisdiction is implicated. They solely argue that there is related-to jurisdiction here.

The Defendants also argue that the bankruptcy court's related-to jurisdiction includes supplemental jurisdiction under 28 U.S.C. § 1367. But, as explained above, the bankruptcy court had no related-to jurisdiction over Autumn Wind's fraud and tortious-interference claims against the Defendants. We thus have no need to explore the open question in this circuit of whether a bankruptcy court has supplemental jurisdiction under 28 U.S.C. § 1367. *See In re Bruemmer Dev., LLC*, 515 B.R. 551, 560–61 (Bankr. E.D. Mich. 2014) (discussing the split of authority on this issue and noting that the Sixth Circuit has not addressed the question directly); *see also In re Wolverine Radio Co.*, 930 F.2d at 1140–45 (endorsing a narrow view of bankruptcy courts' jurisdiction, holding that "the bankruptcy court's jurisdiction over a case involving nondebtors [is] to be determined solely by 28 U.S.C. § 1334(b)").

In conclusion, the Defendants have failed to establish the third element of res judicata. Autumn Wind's claims are therefore not precluded by the bankruptcy court's final judgment.

## B.  The Defendants' alternative argument

The Defendants alternatively argue that we should affirm the judgment of the district court because the confirmation of the Chapter 11 reorganization plan precludes Autumn Wind's claims. They raised this argument before the district court, which disagreed.

As a threshold matter, Autumn Wind contends that the Defendants' argument is now barred because they failed to file a cross-notice of appeal as required by Rule 4(a)(3) of the Federal Rules of Appellate Procedure. Rule 4(a)(3)'s cross-notice of appeal requirement is a

claim-processing rule and is not jurisdictional. *Georgia-Pac. Consumer Prods. LP v. NCR Corp.*, 40 F.4th 481, 487 (6th Cir. 2022). "An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court.'" *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (quoting *United States v. Am. Ry. Exp. Co.*, 265 U.S. 425, 435 (1924)). Here, the Defendants' alternative argument "merely asserts additional grounds" to affirm the dismissal granted by the district court. *See Am. Ry. Exp. Co.*, 265 U.S. at 436. The Defendants do not ask us to "provide relief beyond the district court's determination," so a cross-notice of appeal is not required here. *See Georgia-Pac. Consumer Prods. LP*, 40 F.4th at 483.

We therefore turn to the merits of the issue. Autumn Wind contends that we should adopt the district court's reasoning that the plain language of the reorganization plan released Autumn Wind's claims against Insight, but not against the Defendants. The Defendants do not contend that they received an express release under the plan. Rather, they argue that the plan satisfied all "Obligations" of Insight to Autumn Wind under the initial term loan and that those "Obligations" included all of Autumn Wind's damages arising from Insight's breach. According to the Defendants, if the plan satisfied "all damages" from the breach, there can be no remaining recovery for tortious inducement of that breach, so the Defendants should be "effectively released from liability."

The authority that the Defendants rely upon does not support this premise. The claims here are related to intentional torts, not to a guarantor's liability for a debt satisfied in bankruptcy. Nor does the potential overlap in damages for breach of contract and tortious interference serve to bar either claim. *See, e.g.*, *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 887 F.2d 1128, 1138 (1st Cir. 1989) (holding that "the issue of double recovery should be resolved after rather than before the jury has returned a verdict on each claim"); *Monumental Life Ins. Co. v. Nationwide Ret. Sols., Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003) (finding "incorrect" the statement that the damages for breach of contract and tortious interference are "identical" because tortious interference allows punitive damages); Restatement (Second) Torts § 774A(2) (holding that any overlap in damages in claims for tortious interference and breach of contract "does not affect the damages awardable," but that any overlap might "reduce

the damages actually recoverable on the judgment"). In sum, we agree with the district court that the plan does not release the Defendants from liability for Autumn Wind's claims.

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.